FILED
JAN 15 2019 LA
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

RECEIVED
JAN 15 2019
MICHAEL T. MASON
UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| DONALD E. MUDD and | ) | Violations: Title 18, United States |
| RODNEY HAWKINS | ) | Code, Sections 1341 and 1343 |

**COUNT ONE**

19 CR 28
JUDGE NORGLE
MAGISTRATE JUDGE GILBERT

The SPECIAL JUNE 2018 GRAND JURY charges:

1. At times material to this indictment:

   a. The Victim Company was a sealants manufacturer, headquartered in Waterford, New York, that sold sealants to large commercial retailers ("big box stores").

   b. In order to promote its sealant products and facilitate sales, the Victim Company paid third-party vendors to manage onsite sales at big box stores. In order to receive payment from the Victim Company for these services, the vendors were required to submit invoices to the Victim Company for the work performed, based on which the Victim Company issued payments to the vendors.

   c. Defendant RODNEY HAWKINS was Vice President, and earlier General Manager, of the Victim Company's Sealants Business Unit, which was located in North Carolina. HAWKINS's responsibilities included overseeing all sealant-related business operations, including management of third-party vendors.

   d. HAWKINS owned and operated Tarheel Capital Services LLC ("Tarheel"), whose principal place of business was in North Carolina. HAWKINS opened and controlled a bank account for Tarheel at Bank A.

1

e. HAWKINS was married to Individual A, who owned and operated 3 Monkeys Monogramming ("3 Monkeys"), whose principal place of business was in North Carolina. Individual A opened a bank account for 3 Monkeys at Bank B.

f. Defendant DONALD E. MUDD was the President of Mudd-Lyman Sales and Services Corporation ("Mudd-Lyman"), located in Skokie, Illinois, and a Manager of Simply Service LLC ("SSI"), also located in Skokie. Mudd-Lyman and SSI served as third-party vendors for the Victim Company and were responsible for, among other things, managing the Victim Company's products at big box stores in the Northeast region of the United States.

g. SSI maintained a bank account at Bank C. Mudd-Lyman maintained a bank account at Bank D. MUDD was a signatory on both accounts.

h. Processor A was a third-party payment processor located in Memphis, Tennessee, that the Victim Company used to pay vendors.

2. Beginning no later than in or around 2009, and continuing through in or around March 2014, in the Northern District of Illinois, Eastern Division, and elsewhere,

DONALD E. MUDD and<br>RODNEY HAWKINS,

defendants herein, devised, intended to devise, and participated in a scheme to defraud the Victim Company, and to obtain money from the Victim Company by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, which scheme is further described below.

3. It was part of the scheme that MUDD and HAWKINS obtained at least approximately $951,755 from the Victim Company through a false billing and kickback scheme in which defendants fraudulently caused the Victim Company to issue unauthorized payments to

entities controlled by MUDD, after which MUDD directed a portion of the stolen funds back to HAWKINS, or to entities controlled by HAWKINS, though various false and fraudulent means.

4. It was further part of the scheme that MUDD and HAWKINS knowingly prepared and submitted to the Victim Company invoices falsely reflecting that Mudd-Lyman and SSI had performed services that they did not in fact perform. Defendants knew that the fraudulent invoices falsely represented the date, cost, and type of service that was purportedly performed on behalf of the Victim Company. Defendants submitted these false invoices to the Victim Company for the purpose of fraudulently causing the Victim Company to issue payments to Mudd-Lyman and SSI to which defendants knew those entities were not entitled.

5. It was further part of the scheme that MUDD and HAWKINS prepared and submitted to the Victim Company monthly commission statements for Mudd-Lyman and SSI that fraudulently inflated the commissions to which those entities were entitled based on the Victim Company's previous agreement with those entities. Defendants created a fraudulent commission contract between SSI and the Victim Company falsely reflecting that the Victim Company had agreed to pay SSI a commission on all of the Victim Company's sales at the Northeast region locations of Big Box Store A. Defendants knew that, in fact, the Victim Company had only agreed to pay SSI a commission based on a percentage of those sales.

6. It was further part of the scheme that HAWKINS used his position as Vice President and General Manager of the Victim Company's Sealants Business Unit to approve and cause to be approved payments by the Victim Company to Mudd-Lyman and SSI based on invoices that HAWKINS and MUDD knew to be false in that they requested payment for services that were never performed.

7. It was further part of the scheme that HAWKINS, as Vice President and General Manager of the Victim Company's Sealants Business Unit, knowingly approved and caused to be approved fraudulently inflated commission payments to Mudd-Lyman and SSI that HAWKINS and MUDD knew the Victim Company had not authorized.

8. It was further part of the scheme that once the Victim Company issued payments to Mudd-Lyman and SSI for the fraudulent invoices and inflated commissions, MUDD provided kickback payments to HAWKINS either by check or in cash, or by allowing HAWKINS to use his credit card to make purchases for HAWKINS and HAWKINS's family.

9. It was further part of the scheme that, in order to conceal his receipt of the kickback payments, HAWKINS created and submitted invoices to SSI in the names of Tarheel and 3 Monkeys that falsely reflected that SSI had purchased items from Tarheel and 3 Monkeys that SSI had not in fact purchased. Based on these false invoices, MUDD caused kickback payments to be issued in the names of Tarheel and 3 Monkeys, which HAWKINS caused to be deposited into Tarheel's bank account at Bank A and 3 Monkeys' bank account at Bank B and then converted to HAWKINS's own benefit.

10. It was further part of the scheme that HAWKINS certified to the Victim Company that he did not have a relationship that conflicted with the interests of the Victim Company, including that he did not have a financial interest in any entity that had a commercial relationship with the Victim Company, knowing that such certification was false.

11. It was further part of the scheme that defendants concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden, the existence, purpose, and acts done in furtherance of the scheme.

12. On or about December 23, 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

DONALD E. MUDD and
RODNEY HAWKINS,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email attaching a false SSI invoice sent by MUDD in Illinois to HAWKINS that was routed through a computer server in Virginia;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL JUNE 2018 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 11 of Count One of this indictment are incorporated here.

2. On or about December 23, 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

DONALD E. MUDD and
RODNEY HAWKINS,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be sent by the United States Postal Service, according to the directions thereon, a package from Processor A in Memphis, Tennessee, to Simply Service LLC, in Skokie, Illinois, containing a check issued to Simply Service LLC for $35,400 from the Victim Company for payment of false Simply Service LLC invoice number 13-00;

In violation of Title 18, United States Code, Section 1341.

## COUNT THREE

The SPECIAL JUNE 2018 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 11 of Count One of this indictment are incorporated here.

2. On or about November 1, 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

DONALD E. MUDD and<br>RODNEY HAWKINS,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email sent from Big Box Store A in Austin, Texas to HAWKINS, routed through a computer server in Virginia, that confirmed a credit card purchase representing a kickback payment from MUDD to HAWKINS;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL JUNE 2018 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 11 of Count One of this indictment are incorporated here.

2. On or about November 8, 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

DONALD E. MUDD and<br>RODNEY HAWKINS,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, a facsimile from the Victim Company's data center in Upper Arlington, Ohio, to SSI in Skokie, Illinois, confirming a fraudulent commission payment;

In violation of Title 18, United States Code, Section 1343.

## COUNT FIVE

The SPECIAL JUNE 2018 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 11 of Count One of this indictment are incorporated here.

2. On or about December 9, 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

> DONALD E. MUDD and
> RODNEY HAWKINS,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, a facsimile from the Victim Company's data center in Upper Arlington, Ohio, to SSI in Skokie, Illinois, confirming a fraudulent commission payment;

In violation of Title 18, United States Code, Section 1343.

## COUNT SIX

The SPECIAL JUNE 2018 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 11 of Count One of this indictment are incorporated here.

2. On or about December 31, 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

DONALD E. MUDD and
RODNEY HAWKINS,

defendants herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, a facsimile from the Victim Company's data center in Upper Arlington, Ohio, to SSI in Skokie, Illinois, confirming a fraudulent commission payment;

In violation of Title 18, United States Code, Section 1343.

## COUNT SEVEN

The SPECIAL JUNE 2018 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 11 of Count One of this indictment are incorporated here.

2. On or about January 19, 2014, in the Northern District of Illinois, Eastern Division, and elsewhere,

DONALD E. MUDD and
RODNEY HAWKINS,

defendants herein, for the purpose of executing the above described scheme, knowingly caused to be transmitted by means of wire communication in interstate and foreign commerce, certain writings and signals, namely, an interstate wire transfer of approximately $500 from American Express to the Andaz Napa Hotel in Napa, California, representing a kickback payment from MUDD to HAWKINS;

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The SPECIAL JUNE 2018 GRAND JURY further alleges:

1. Upon conviction of an offense in violation of Title 18, United States Code, Sections 1341 or 1343, as set forth in this Indictment, defendants shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. The property to be forfeited includes but is not limited to a personal money judgment in the amount of approximately $951,755.

3. If any of the property described above, as a result of any act or omission by defendants: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY